UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOHN J. OTROMPKE, JD,

           Plaintiff,

       v.

CATHOLIC CHARITIES ALLIANCE,
CATHOLIC CHARITIES COMMUNITY
SERVICES, ARCHDIOCESE OF NEW YORK,
CATHOLIC CHARITIES NEIGHBORHOOD
SERVICES, INC., CATHOLIC CHARITIES
DIOCESE OF BROOKLYN, THE CITY OF
NEW YORK, THE STATE OF NEW YORK,
and RICHARD ROE,

           Defendants.
--------------------------------------------------------------x

**ORDER TO SHOW CAUSE**
24-CV-5878 (RPK) (RML)

RACHEL P. KOVNER, United States District Judge:

       Plaintiff John J. Otrompke brings this *pro se* action against various religious organizations, the City of New York, the State of New York, and an unidentified individual Richard Roe. *See* Compl. (Dkt. #1). Plaintiff's motion to proceed *in forma pauperis* is granted. *See* Mot. for Leave to Proceed *In Forma Pauperis* (Dkt. #2). However, plaintiff is ordered to show cause in writing by November 1, 2024 why this action should not be dismissed.

## BACKGROUND

       The allegations in the complaint, which are assumed true for the purposes of this order, center on plaintiff's difficulties finding and maintaining housing using a housing voucher that he received through the City Family Homelessness and Eviction Prevention Supplement ("FHEPS") program.

       Around October 2018, the City created the City FHEPS housing assistance program, which provides apartment vouchers to beneficiaries who earn less than $70,000 per year. Compl. ¶¶ 1,

3.  The City and State contract with Catholic Charities to help administer the program.[*]  *Id.* ¶ 4. According to plaintiff, "[t]hey employ Defendant Catholic Charities to illegally cancel FHEPS apartment vouchers, and/or perform other mysterious, unspecified tasks." *Id.* ¶ 5.

In 2019, plaintiff became a City FHEPS beneficiary and received a voucher to pay for his rent on an apartment in Jamaica, Queens.  *Id.* ¶ 6.  Plaintiff experienced issues with his landlord in Jamaica, *see id.* ¶ 7, and began searching for a new apartment, *see id.* ¶¶ 8–13.  During his apartment search, he received information about available apartments from a City employee as well as from Catholic Charities, and Catholic Charities assigned him a case manager.  *Id.* ¶¶ 8–12. Plaintiff found and applied for a new apartment in September 2022, but shortly thereafter, the case manager informed him that his apartment voucher had been cancelled.  *Id.* ¶¶ 13–14.  Plaintiff continued living in the Jamaica apartment and the voucher was later renewed.  *Id.* ¶¶ 15–18. Plaintiff's landlord in Jamaica secured an eviction order against plaintiff in November 2023, *id.* ¶ 17, and the City encouraged him to sign a lease on a new apartment, *id.* ¶¶ 19–20.

In June 2024, plaintiff signed a lease for a new apartment in Queens, but a couple weeks later, plaintiff "learned from Catholic Charities that his apartment voucher had been 'cancelled'" without plaintiff receiving any opportunity for a hearing.  *Id.* ¶¶ 23–26.  As a result, when plaintiff was evicted in July 2024, he expended his limited funds and eventually moved into a homeless shelter operated by the City.  *Id.* ¶¶ 27–32, 34, 36–37.  Living in a homeless shelter has required plaintiff to pass through metal detectors and abide by an 11 P.M. curfew, *id.* ¶ 35; prevented plaintiff from getting a scheduled medical procedure because of "unhygienic" conditions, *id.* ¶ 38; put plaintiff in close contact with "paroled felons" and "loud, raucous partying," *id.* ¶¶ 41, 47; and prevented plaintiff from working as a freelance journalist, *id.* ¶ 52.

---

[*] Although plaintiff lists multiple religious entities in the caption of his complaint, the allegations within the complaint allude to "Catholic Charities" and not to the related entities.

In August 2024, plaintiff brought this action alleging violations of his rights to due process and equal protection, *see id.* ¶¶ 1–55, as well as claims for breach of contract, negligence, tortious interference with a contract, intentional infliction of emotional distress, and fraud, *id.* ¶¶ 56–63. Plaintiff names several Catholic Charities organizations and the Archdiocese of New York as defendants (collectively, "the Catholic Charities defendants"), as well as the City, the State, and "Richard Roe, an unidentified individual officer [of] one or more of the other defendants." *Id.* at 1. Plaintiff seeks injunctive relief "ordering Defendants to provide Plaintiff with an apartment voucher," in addition to "nominal and perhaps other damages." *Id.* at 8.

## STANDARD OF REVIEW

When a litigant files a lawsuit *in forma pauperis*, the district court must dismiss the case if it determines that the complaint "is frivolous or malicious," that it "fails to state a claim on which relief may be granted," or that it "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To avoid dismissal for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plaintiff, as "the party asserting federal jurisdiction," must also establish subject-matter jurisdiction to avoid dismissal. *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 (2d Cir. 2019) (citation omitted).

A *pro se* plaintiff's complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). However,

"*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quotation marks and citation omitted).

## DISCUSSION

### I. Federal Claims

Plaintiff alleges that he was denied due process in violation of the Fifth and Fourteenth Amendments and equal protection in violation of the Fourteenth Amendment. *See* Compl. 1, 6. The Court liberally construes the complaint as asserting claims under 42 U.S.C. § 1983, which allows plaintiffs to bring claims in federal court alleging violations of their federal constitutional rights. Plaintiff is ordered to show cause why his Section 1983 claims should not be dismissed.

***The Catholic Charities Defendants.*** Plaintiff's Section 1983 claims against the Catholic Charities defendants appear to fail because those defendants are private organizations. In order to maintain a civil rights action under Section 1983, a plaintiff must allege that "the conduct complained of" was "committed by a person acting under color of state law" and "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Section 1983 does not usually apply to claims against private individuals or private organizations. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Plaintiff does not appear to allege that the Catholic Charities defendants were acting under color of state law. While plaintiff claims that Catholic Charities contracted with the City and State, a private entity does not become a state actor merely by performing under a state contract, *see Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982), or on the basis of "the private entity's creation, funding, licensing, or regulation by the government," *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003).

***The State.***  Plaintiff's Section 1983 claims against the State appear to be barred by Eleventh Amendment sovereign immunity, which "is a jurisdictional defect." *Brown v. Halpin*, 885 F.3d 111, 118 (2d Cir. 2018) (citation omitted).  Eleventh Amendment sovereign immunity prevents federal courts from hearing Section 1983 suits against states unless they consent, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and "[i]t is well-established that New York has not consented to § 1983 suits in federal court," *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010).

***The City.***  Plaintiff's Section 1983 claims against the City appear to fail because a municipality can be liable under Section 1983 only if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights.  *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978); *accord Connick v. Thompson*, 563 U.S. 51, 60–61 (2011).  Municipalities "are not vicariously liable under [Section] 1983 for their employees' actions." *Connick*, 563 U.S. at 60.  A plaintiff who seeks to hold a municipality liable under Section 1983 must allege (i) "an official policy or custom" that (ii) "cause[d] the plaintiff to be subjected to" (iii) a "denial" of a federally guaranteed right.  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted).  Plaintiff appears not to allege any unconstitutional policy or custom attributable to the City that would create municipal liability.  The complaint claims that the City and State "employ Defendant Catholic Charities to illegally cancel FHEPs apartment vouchers."  Compl. ¶ 5.  However, this single statement, without any factual allegations of a pattern of activity, is much too vague and conclusory to establish municipal liability.  Plaintiff also alleges that Catholic Charities has certain duties to City FHEPS beneficiaries, *id.* ¶ 58, and "the fact that this happened twice"—presumably, that plaintiff was twice unable to secure housing that he applied for—"under two separate caseworkers suggests a governmental policy or custom,"

*id.* ¶ 59.  But plaintiff does not explain what the "policy or custom" is or why the actions of Catholic Charities caseworkers are "governmental."

**Richard Roe**.  Finally, while plaintiff names as a defendant "Richard Roe, an unidentified individual officer [of] one or more of the other defendants," *id.* at 1, the complaint is devoid of any factual allegations explaining Roe's involvement in the alleged violation of plaintiff's rights. Indeed, the complaint never once mentions Roe except for in the caption.  Accordingly, plaintiff appears not to state a claim against Roe, as plaintiff has not pleaded "factual content that allows the court to draw the reasonable inference that [Roe] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see, e.g.*, *Maltese v. Brown*, No. 23-CV-4566 (RPK) (LB), 2024 WL 3875940, at *4 (E.D.N.Y. Aug. 19, 2024) (dismissing claim against state official where "[t]he allegations do not seem to implicate [the official] at all").

## II.   State-Law Claims

Plaintiff additionally asserts claims for breach of contract, negligence, tortious interference with a contract, intentional infliction of emotional distress, and fraud.  *See* Compl. ¶¶ 56–63. Plaintiff is ordered to show cause why the Court should retain jurisdiction over his state-law claims if his federal claims are dismissed.  Under 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction."  Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018).  As a general matter, where "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quotation marks and citation omitted).  Based on the complaint, there does not appear to be any persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed.

**CONCLUSION**

Plaintiff shall show cause in writing by November 1, 2024 why this action should not be dismissed. *See Nwoye v. Obama,* No. 22-CV-1253, 2023 WL 382950, at *1 (2d Cir. Jan. 25, 2023) ("The issuance . . . of an order to show cause why a complaint should not be dismissed *sua sponte* for a stated reason, will typically suffice to provide notice and an opportunity to be heard.") If plaintiff fails to respond within the time allowed, the action shall be dismissed and the Clerk of Court shall enter judgment and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Order to Show Cause to plaintiff and note the mailing on the docket.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:      October 3, 2024
            Brooklyn, New York